UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re:                                              :    Chapter 7
                                                    :
THELEN LLP,                                         :    Case No. 09-15631 (ALG)
                                                    :
         Debtor.                                   :

---

Yann Geron, Chapter 7 Trustee of the Estate         :
of Thelen LLP,                                      :
         Plaintiff,                                :
   v.                                            :    Adv. Pro. No. 11-02648 (ALG)
                                                    :
GARY L. FONTANA, et al.,                            :
         Defendants.                               :

---

Yann Geron, Chapter 7 Trustee of the Estate         :
of Thelen LLP,                                      :
         Plaintiff,                                :
   v.                                            :    Adv. Pro. No. 11-02674 (ALG)
                                                    :
FREDERICK COHEN,                                    :
         Defendant.                                :

---

Yann Geron, Chapter 7 Trustee of the Estate         :
of Thelen LLP,                                      :
         Plaintiff,                                :
   v.                                            :    Adv. Pro. No. 11-02690 (ALG)
                                                    :
ALLEN J. ROSS,                                      :
         Defendant.                                :

---

Yann Geron, Chapter 7 Trustee of the Estate         :
of Thelen LLP,                                      :
         Plaintiff,                                :
   v.                                            :    Adv. Pro. No. 13-01444 (ALG)
                                                    :
GREGORY P. O'HARA,                                  :
         Defendant.                                :

---

APPEARANCES:

REID COLLINS TSAI LLP
*Counsel to Yann Geron, Chapter 7 Trustee*
One Penn Plaza, 49th Floor
New York, New York 10119

    By:    Angela J. Sommers, Esq.
              Jeffrey E. Gross, Esq.
              Anne M. Bahr, Esq.
              Yonah Jaffe, Esq.

Frederick L Whitmer, Esq.
*Pro se, and for others in Whitmer/Fontana group*
c/o Kilpatrick Townsend & Stockton LLP
1114 Avenue of the Americas
New York, New York 10036

Frederick Cohen, Esq.
*Pro se, and for Allen J. Ross*
1540 Broadway
New York, New York 10036

Gregory P. O'Hara, Esq.
*Pro se*
c/o Nixon Peabody LLP
3000 El Camino Real, Ste. 500
Palo Alto, California 94306

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

MEMORANDUM DECISION CONCERNING TRUSTEE'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
AS TO DATE OF TRANSFER AND REASONABLY EQUIVALENT VALUE

On September 18, 2009, the law firm Thelen LLP ("Thelen") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, and Yann Geron (the "Trustee") was appointed the chapter 7 trustee. The bankruptcy filing occurred almost one year after the partners of Thelen, a registered limited liability partnership governed by California law, voted to dissolve the partnership. Upon the election to dissolve, taken on October 28, 2008, the partners entered into a Dissolution Agreement which contemplated that the firm would effectuate the dissolution on a date between November 26, 2008 and December 15, 2008. The dissolution was effectuated on November 30, 2008.

During the period from December 1, 2006, through October 27, 2008, when the law firm was primarily known as Thelen Reid Brown Raysman & Steiner LLP ("TRBRS"),[1] its business was governed by The Third Amended and Restated Limited Liability Partnership Agreement of Thelen Reid Brown Raysman & Steiner LLP (the "Third Partnership Agreement"). In August, 2008, the withdrawal of several partners triggered a non-monetary breach of the law firm's loan agreement with Citibank, NA; the firm continued to operate and in September 2008 shortened the firm name to Thelen, LLP. On October 28, 2008, however, the partners voted to dissolve the firm, and to adopt the Fourth Amended and Restated Limited Liability Partnership Agreement of Thelen LLP (the "Fourth Partnership Agreement), which governed its affairs up to the

---

[1] The name Thelen Reid Brown Raysman & Steiner LLP became effective December 1, 2006, when members of the law firm Brown Raysman Millstein Felder & Steiner LLP became members of the law firm Thelen Reid & Priest LLP. In September 2008, the firm became known as Thelen LLP.

3

dissolution.[2]   Each of the Defendants either was a Partner of Thelen as of December 1, 2006 or became a Partner thereafter and prior to October 28, 2008; and each signed one or more of the Partnership Agreements or through conduct manifested an intention and agreement to be bound by one or more of the Partnership Agreements.[3]   Thelen had three tiers of partners: (i) equity partners without guaranteed compensation ("Equity Partners"), (ii) Equity Partners with guaranteed compensation, and (iii) income partners (those who received salaries).   All of the defendants in the instant adversary proceeding are or were Equity Partners.[4]   The Trustee does not challenge the proposition that the Partnership Agreements were entered into by the parties in good faith and on an arms-length basis.

On September 15, 2011, the Trustee commenced similar adversary proceedings against the Thelen partners (including the Defendants) seeking, among other things, damages for breach of contract, avoidance of fraudulent conveyances and turnover of property of the estate.   In the complaints, as amended on January 22, 2014, the Trustee alleged that the partners had been overcompensated in the year 2008 under the terms of the Partnership Agreements.   Accordingly, he sought damages against each defendant for breach of contract to recover the overpayments, plus costs, interest and attorneys' fees.[5]   In addition, the Trustee alleged that the overpayments were avoidable as fraudulent conveyances under 11 U.S.C. § 548(a)(1)(B) (constructive fraudulent

---

[2]  The Partnership Agreements provide that the laws of the State of California (other than its conflicts of laws principles) apply to the construction, interpretation and effect of the agreements.

[3]  One of the Defendants filed for personal bankruptcy protection, thereby staying any action as against him.

[4]  Two of the defendants, Cohen and Ross, maintain that they entered into separate letter agreements, dated May 29, 2008 (the "Letter Agreements"), pursuant to which TRBRS confirmed a pre-existing agreement for a set amount of guaranteed compensation for 2007 and set forth a binding compensation formula for 2008 based upon specified personal performance targets unrelated to profitability.

[5]  There were also allegations of breach of contract with respect to the capital contribution requirements of the Partnership Agreements.

conveyance).

At a hearing on January 23, 2014, the Court was informed that the parties to the instant proceedings had agreed that the issues relating to the fraudulent conveyance claims should be decided first and that the contract issues would be determined thereafter, and the Court entered a scheduling order to that effect on January 28, 2014.   In accord therewith, the Trustee has moved for partial summary judgment with respect to two aspects of the fraudulent conveyance claims.  At issue are certain draws that the partners received as advances against their entitlement to an allocation of the eventual net profits of the law firm, which the Trustee alleges were received for less than reasonably equivalent value ("REV") at a time when Thelen was insolvent.   The Trustee seeks summary judgment declaring (i) the point in time of the alleged constructively fraudulent transfers, *viz*, the dates of the alleged overpayments for fraudulent conveyance purposes; and (ii) that the governing partnership agreements conclusively establish the reasonably equivalent value of each partner's services for fraudulent conveyance purposes.

*Summary Judgment*

Summary judgment under Federal Rule of Civil Procedure 56, made applicable by Federal Rule of Bankruptcy Procedure 7056, is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Morenz v. Wilson–Coker*, 415 F.3d 230, 234 (2d Cir. 2005). The moving party bears the burden of demonstrating the absence of any genuine issue of material fact, and all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). However, once there is a showing of the absence of an

5

issue of fact, the opposing party must produce specific evidence that raises a genuine issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A fact is "material" if it might affect the outcome of the suit under the governing substantive law, and "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Partial summary judgment may be granted on a discrete issue if the party identifies "each claim or defense – or the part of each claim or defense – on which summary judgment is sought . . . [and shows that] there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). As noted above, the Trustee seeks summary judgment as to the date of the transfers and the issue of reasonably equivalent value, both for fraudulent conveyance purposes. On both issues, he relies essentially on the Partnership Agreements.

*The Partnership Agreements*

The Partnership Agreements provided that "'Partner' means, as of any date, each individual who on such date is a Partner with the right to share in the Net Income of the Partnership pursuant to Section 2.1." (Third, § 1.10.11; Fourth § 1.9.11). Section 2.1 provided that

> The Partners in the Partnership shall be those individuals who have been admitted as Partners to the Partnership pursuant to the terms of this Agreement and who have not ceased to be Partners pursuant to Article 6. *Each of the Partners who have the right to share in the Net Income of the Partnership (irrespective of whether such Partner's compensation is determined solely based upon the right to share in the Net Income of the Partnership) and who have an interest in the capital of the Partnership are parties to this Agreement*. Those Partners are identified in Schedule 1 attached hereto and as amended from time to time in accordance with Section 8.2 (relating to amendments to this Agreement). The Partnership may from time to time designate one or more persons as "partners" who are held out to third

6

parties as partners in the Partnership. Such persons shall have only such rights as are expressly accorded to them by the partners under this Agreement. (emphasis added).

The Partnership Agreements then provided in Article 4 for the allocation of Net Income to Partners, with each partner entitled to receive an allocation of the partnership's "Net Income" for the calendar year (or relevant portion thereof) in proportion to certain sharing ratios. (Section 4.1.1).[6] Section 4.2 of the Partnership Agreement concerns distributions and section 4.2.1, relating specifically to periodic draws, provided that:

> Each Partner shall be entitled to receive a draw *as an advance* against such Partner's share of Net Income of the Partnership on a periodic basis under a policy determined from time to time by the Office of the Chair. Such draws need not be equal among partners. (emphasis added).

Section 4.2.2 provided that:

The Partnership shall distribute to the Partners from time to time, in proportion to their Sharing Ratios, all or a portion of the Net Income of the Partnership, reduced by prior draws or other advances against Net Income paid to such Partners pursuant to Section 4.2.1, under a policy determined from time to time by the Office of the Chair. Such policy shall take into account, among other matters, the Capital Policy of the Partnership. All Partnership disbursements which are not deductible in computing Net Income, or which are made for the direct benefit of a Partner, shall be treated as distributions to the benefited Partners in accordance with a policy determined from time to time by the Office of the Chair.

In brief, the Partnership Agreements thus provided that the "Partners" would share in the

---

[6] Section 4.1.1 of the Third Partnership Agreement and section 4.1.1.1 of the Fourth Partnership Agreement both provided that

> The Net Income of the Partnership for each calendar year or relevant portion thereof (including each item of income, gain, loss, deduction and credit, or basis therefor) shall, after taking into account any allocations of income or similar taxable payments made pursuant to Section 4.1.3 below and any deductions specially allocated pursuant to Section 4.1.4 below, be allocated to the Partners in proportion to their Sharing Ratios.

Each partner entering into the Partnership Agreement was assigned a certain number of points that were used to calculate the partner's "Sharing Ratio," and this amount was set forth in Schedule 1 to the Partnership Agreement.

7

Net Income of the Partnership; that the Partners could receive periodic advances as a draw against Net Income; and that an allocation of net income to a partner would be reduced by "prior draws or other advances."[7]

*The Date of Transfer*

The Trustee contends that the draws and other distributions were intended to be advances to be netted against Net Income allocable to a Partner and that since the Defendants were ultimately entitled only to their allocable share of Net Income for the calendar year 2008 (or relevant portion thereof) ("Final ASNI"), the date of the "transfer" for fraudulent conveyance purposes is December 31, 2008. On that date, the Trustee argues, draws and other advances could be calculated as exceeding Final ASNI for the calendar year, and the excess was due to Thelen. It is not contested that in 2008, the Debtor paid Equity Partners semi-monthly draws and that the draws were $1,000 per equity point per month, with a minimum draw of $21,000 per month for Full Equity Partners (16 points or higher). These draw payments ("Draw Advances") were made in the middle of and at the end of each month, and two additional payments were made in March and June of 2008.

The Trustee maintains that the use in section 4.2.1 of the term "advance" in reference to the periodic draws to which each partner was entitled of necessity requires that there be a netting when calculating a partner's Final ASNI "for each calendar year or relevant portion thereof" under section 4.1.1. According to the Trustee, the Defendants left the firm after October 30, 2008, and he thereafter netted Draw Advances against partners' final ASNI for the partners as of December 31, 2008. Using this calculation, the netting resulted in a deficiency because the Draw Advances

---

[7] The record does not disclose whether any policies were issued by the Office of the Chair, as authorized by section 4.2.2.

8

exceeded the defendant's Final ASNI. Based on the above, the Trustee contends, the transfer for fraudulent conveyance purposes took place only when the putative "true-up" was performed (calendar year-end). He also contends that reasonably equivalent value should be measured by applying the partnership provisions, and determining the extent to which the Defendants' draws exceeded Final ASNI. Defendants dispute both assertions.[8]

Defendants first assert that the provisions of the Partnership agreements are not as clear as the Trustee argues with respect to the obligation of existing partners to repay over-advances. There appears to be no dispute that "Former Partners" had such an obligation. Article 6 of the Partnership Agreements delineates the various ways in which a partner could cease to be a partner, and section 6.6.3 specifically provided for the repayment of over-advances by Former Partners, as follows:

> The Partnership shall be entitled to recover any amount owed to it by a Former Partner on the date such Partner ceases to be a Partner by offset against amounts otherwise required to be paid to such Former Partner pursuant to this Section 6.6. Unless otherwise agreed, the excess, if any, of such amount over the amount otherwise payable to such Former Partner shall become payable immediately on the date such Former Partner ceases to be a Partner.

However, Article 7 of both Partnership Agreements, which concerns dissolution and termination of the partnership, did not deal with the issue of a partner's obligation to repay in the event of dissolution. This has led some of the Defendants to argue that the Agreements provided that a Partner's obligation to repay was dealt with exclusively by an adjustment to the Partner's capital account.[9]

---

[8] Two of the Defendants also argue that they had separate Letter Agreements with the law firm and that these agreements provided them with guaranteed payments. There seems no dispute that any additional rights these Partners possessed under their contracts with Thelen must be factored in.

[9] This assumes that Defendants did not become "Former Partners" upon the firm's dissolution or when it closed its

Whether or not this last assertion has any merit based on the face of the Agreements, the Trustee's position has two problems, one procedural and one substantive. Procedurally, it would be unfair for the Court to rule on an issue of contractual construction when the parties agreed that the contract issues would be determined only after the fraudulent conveyance issues. As noted, some of the Defendants argue that the only way a partner other than a Former Partner was required to repay Draw Advances was through an adjustment of the partner's capital account. The Trustee responds that this construction is wrong, but there is no way to determine these competing claims except by construction of the contract, which would be premature on this record. It is also impossible to determine on this record whether the Defendants are "Former Partners" of Thelen or could be rendered "Former Partners" by the Trustee at any time.

More substantively, the Partnership Agreements do not explicitly provide for a true-up at the end of a calendar year. This was especially true at year-end 2008, when December 31st was never reached; the partnership dissolved on November 30, 2008. In any event, accepting the Trustee's contention that the payment of "advances" to Partners created an obligation on the part of the Partners to repay those advances when Final ASNI could be calculated, a transfer was undoubtedly made on the date the funds were paid, subject to the condition that the payment would be returned if Final ASNI did not reach a certain level. Transfer is defined in the Bankruptcy Code as including "each mode, direct or indirect, absolute or *conditional*, voluntary or involuntary, of disposing of or parting with – (i) property; or (ii) an interest in property." 11 U.S.C. § 101(54)(D) (emphasis added). The fact that the advances to the Defendants were conditional does not mean that they were not transfers for fraudulent conveyance purposes. S*ee Casa de Cambio Majapara v. Wachovia Bank (In re Casa de Cambio Majapara)*, 390 B.R. 595, 599

---

doors. This is a disputed issue.

(Bankr. N.D. Ill. 2008) (concluding that even though a prejudgment attachment is conditional, as it is subject to final adjudication in the case, it falls within the broad definition of transfer under the Bankruptcy Code).

It is possible that there may be more than one actionable transfer in a fraudulent conveyance case involving the disposition of a debtor's interest in certain property. *In re McKeever*, 132 B.R. 996, 1008 (Bankr. N.D. Ill. 1991). In theory, release of a partner from an obligation to repay an advance could be a transfer representing a fraudulent conveyance.[10] However, the record does not disclose there was a release, and the Trustee certainly does not claim that one took place. Assuming that the Trustee is correct as to a repayment obligation that came due when Final ASNI could be calculated, the record more fairly discloses a conditional payment and an alleged obligation of the Partner to repay. The Trustee in fact argues exactly this in his claim for breach of contract, but a claim for damages for breach of contract is distinct from a claim to recover property conveyed out of an estate for less than REV at a time when the transferor was insolvent. *See* 1 Glenn, FRAUDULENT CONVEYANCES AND PREFERENCES § 56 (2001). In this case, the conveyances to be redressed by the fraudulent conveyance laws are the advances paid prior to the dissolution of Thelen in 2008.

Indeed, under the facts of this case, it would be particularly inappropriate to deem year-end 2008 as the relevant date for fraudulent conveyance purposes because that would become the date for determining solvency or insolvency. *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 546 (1994). By December 31, 2008, Thelen was in dissolution and may well have been insolvent.

---

[10] There is no question that a reconciliation of accounts and a "netting" can result in a fraudulent conveyance. *See Official Committee of Unsecured Creditors v. Lozinski (In re High Strength Steel, Inc.)*, 269 B.R. 560, 567-68 (Bankr. D. Del. 2001); *Angell v. Montague Farms, Inc. (In re Tanglewood Farms, Inc.)*, 2013 WL 1619390 at *4 (Bankr. E.D.N.C. 2013).

11

However, the Defendants did not pay themselves advances at year-end 2008 when the end of the game was known. They contend that they received advances earlier in the year when they were still (i) performing legal services for Thelen's clients, (ii) earning fees from their clients and (iii) trying to hold a faltering law firm together. It may be that the firm was insolvent and that the end was inevitable or known to be inevitable when the advances or some of them were made, but the Trustee cannot be relieved of his obligation to prove insolvency on the date of the fraudulent transfer by moving that date to the end of the year. On the record of this case, the Trustee's motion for summary judgment concerning the date of the transfer is denied.

*Reasonably Equivalent Value*

The Trustee has also moved for summary judgment on the issue of reasonably equivalent value (REV), arguing that the contract is determinative as to the issue of the value of the services provided by the Defendants to Thelen. The Trustee cites a number of cases to support his position that a contract freely entered into, at arms-length, can establish REV. *In re R.M.L., Inc.*, 92 F.3d 139, 149 (3d Cir.1996)); *see also*, *Pereira v. WWRD US LLC (In re Waterford Wedgwood USA, Inc.)*, 500 B.R. 371, 382-83 (Bankr. S.D.N.Y. 2013); *Pereira v. Wells Fargo Bank, NA (In re Gonzalez)*, 342 B.R. 165, 173 (Bankr. S.D.N.Y. 2006). This is consistent with the Supreme Court's decision in *BFP v. Resolution Trust Corp.*, 511 U.S. at 545, that a foreclosure sale held openly and in accordance with state law is ordinarily determinative on the issue of reasonably equivalent value.

The Trustee's position could be viewed as a concession because it accepts the proposition that the Defendants were entitled to their net payments under the Partnership Agreements even though the payments were equity interests in the Partnership. Moreover, the Trustee does not

12

claim that the Fourth Partnership Agreement improperly released any obligations owed by the Partners who adopted it, to the detriment of creditors.  *Compare*, *In re Brobeck, Phleger & Harrison LLP*, 408 B.R. 318 (Bankr. N.D. Cal. 2010).   The Defendants nevertheless assert that they are entitled to present additional evidence of the services they performed to show that they provided reasonably equivalent value for the payments they received.   Some of the Defendants argue that they provided additional services to the firm because of its precarious position.   They contend that, as partners who stayed until the bitter end, they kept the ship afloat and accomplished a transition for many partners and employees, for their benefit and the benefit of the creditors.   As a matter of contract law, such evidence would seemingly be irrelevant on the issue of each partner's obligation to repay 2008 advances that exceeded the partner's share of Final ASNI.  Nevertheless, as noted above, fraudulent conveyance law is different from contract law.   The cases are clear that a defendant is not entitled to retain fraudulent conveyances merely because they were provided pursuant to a contract.  *See e.g.*, *TSIC, Inc. v. Thalheimer (In re TSCI, Inc.)*, 428 B.R. 103, 114-115 (Bankr. D. Del. 2010) (concluding that a severance payment to a CEO pursuant to terms of an employment contract was a fraudulent conveyance where the debtor only benefitted to the extent of the services provided by CEO, who already received an $850,000 base salary in exchange for those services).   This case is the opposite.   Nevertheless, as a matter of principle, on the limited record before the Court, Defendants should not be bound by the contract for purposes of proof of REV.   This is especially true because the contract was never fully performed.   The law firm dissolved before year-end, and the Defendants were called upon to perform under extraordinary circumstances.

13

*Next Steps*

As noted above, the motions currently before the Court were filed pursuant to a scheduling order entered on January 28, 2014, which provided that the fraudulent conveyance issues should proceed first and the contract issues second. It is clear that this priority should be reconsidered. The Trustee has in effect taken the position that he should be awarded judgment on the contract issues, asserting that they are determinative of the fraudulent conveyance issues. Although this is not entirely correct, for the reasons set forth above, it appears that the Trustee views his case as dependent on a finding that the Defendants breached their contracts by failing to repay advances in excess of Final ASNI.

Since it is clear that the contract issues predominate, the decision to proceed first with the fraudulent issues should be reconsidered. This also requires reconsideration of the question of the Defendants' right to arbitrate the contract issues based on an arbitration clause in the Partnership Agreements.

In 2012, one of the Defendants moved to compel arbitration; and in an oral decision read into the record on April 17, 2012, this Court denied the motion, primarily on the ground that the fraudulent conveyance issues predominated and that a bankruptcy trustee cannot be compelled to arbitrate a statutory fraudulent conveyance claim. The Court's order, entered April 30, 2012, was affirmed by the District Court. *Geron v. Cohen (In re Thelen LLP)*, Slip. Op., 12 Civ. 4790 (ALC) (S.D.N.Y. March 21, 2013).

Now that it appears that the contract issues predominate, this determination should be reconsidered. Moreover, another of the Defendants has recently moved to compel arbitration of the claims against him, asserting that he never filed a proof of claim and attempting to distinguish

14

his right to arbitrate from the right of the Partner whose motion was denied. Whether or not this proposition is correct, it is clearly appropriate to consider (i) whether the appropriate resolution of these cases would be to decide the contract issues immediately, reserving the fraudulent conveyance issues for later court determination, if necessary; and (ii) whether the Defendants have a right to arbitrate the contract issues. The parties are directed to schedule a hearing promptly to consider these issues and are invited to file brief submissions explaining their positions. In the meantime, Defendants should jointly settle an order consistent with this decision denying the Trustee's motion for partial summary judgment.

Dated: New York, New York
      May 23, 2014

                                **s/Allan L. Gropper**
                                UNITED STATES BANKRUPTCY JUDGE